IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HITACHI CAPITAL AMERICA CORP., | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CIVIL ACTION NO.  06-1959 |
| | } | |
| MEDICAL PLAZA SURGICAL CENTER, | } | |
| LLP., MELINDA K. ANDRESS, MICHAEL | } | |
| R. MANN, DAVID H. JANOWITZ, | } | |
| RICHARD NULIA-CROUSE, BENNY J | } | |
| SANCHEZ, DUY V. BUI, | } | |
| JOSE R. GUARJARDO, ANTHONY J. | } | |
| LAMARRA, and CLIFFORD E. KIRBY | } | |
| | } | |
| Defendants. | } | |

**<u>OPINION & ORDER</u>**

Pending before the court is Plaintiff Hitachi Capital America Corporation's ("Hitachi's") motion for summary judgment (Doc. 38) against Defendants Melinda K. Andress ("Andress"), Michael R. Mann ("Mann"), Richard Nulia-Crouse ("Crouse"), Duy V. Bui ("Bui"), Jose R. Guarjardo ("Guarjardo"), and Anthony LaMarra ("LaMarra") (collectively "individual Defendants").  LaMarra, Buy, and Guarjardo filed responses (Docs. 40, 42, and 43 respectively).  Hitachi replied (Doc. 44), and LaMarra filed a sur-reply (Doc. 45).  For the reasons that follow, the court ORDERS that Plaintiff's motion is GRANTED.

I.        <u>Background</u>

This is a suit on guaranty agreements made in connection with a loan issued by Hitachi to Defendant Medical Plaza Surgical Center ("MPSC") for $925,501.11 in principal and $302,730.69 in interest (the "Note").  MPSC's managing partner, Defendant Clifford Kirby ("Kirby") executed the Note on May 13, 2005.  (Master Loan Security Agreement No. 20343, Pl.'s

App. Ex. A, Doc. 39.)  The individual Defendants executed the Note in their capacity as partners to indicate their consent to the loan transaction.  (*Id*.)

As part of the consideration for obtaining the loan, and to induce Hitachi to extend credit to MPSC, each of the individual Defendants executed guaranty agreements whereby they guaranteed payments of all liabilities and obligations to Hitachi.  Although each agreed to pay on demand all sums due to Hitachi by MPSC, the individual Defendants limited their personal liability to the following amounts:

- Andress – $25,253 (Andress Guaranty, Pl.'s App. Ex. B, Doc. 39).

- Mann – $29,006 (Mann Guaranty, Pl.'s App. Ex. C, Doc. 39).

- Crouse – $58,012 (Crouse Guaranty, Pl.'s App. Ex. D, Doc. 39).

- LaMarra – $43,680 (LaMarra Guaranty, Pl.'s App. Ex. G, Doc. 39).

- Bui – $43,680 (Bui Guaranty, Pl.'s App. Ex. E, Doc. 39).

- Guarjardo – $29,006 (Guarjardo Guaranty, Pl.'s App. Ex. F, Doc. 39).

(hereafter "Guaranty Agreements").[1]  The individual Defendants agreed that their respective guaranty agreements were "an absolute, unconditional and continuing guaranty of the full and prompt payment and performance" and not merely of collection.  (Guaranty Agreements §1.) Moreover, they agreed that Hitachi would not be required to seek payment from MPSC as a prerequisite for seeking payment against them, individually, under the Guaranty Agreements.  (*See id*.)

---

[1] Defendants Kirby, David Janowitz ("Janowitz"), and Benny Sanchez ("Sanchez") also executed guaranty agreements in the following amounts respectively: $25,595, $29,006, and $58,012.  (*See* Pl.'s Compl. Exs. B, E, and G, Doc. 1.) Because MPSC and Kirby failed to answer or otherwise defend the present suit, the court entered default judgment against both on March 26, 2007 (Doc. 47).  Defendants Janowitz and Sanchez have been dismissed from the case.  (*See* Docs. 10 & 51).  The only remaining defendants, therefore, are the individual Defendants against whom Hitachi has filed the current  motion for summary judgment.

Each individual Defendant further agreed, "as the principal obligor and not as a guarantor only," to pay to Hitachi all sums due from the MPSC, which include all losses, costs, court costs, attorney's fees, and expenses that Hitachi might incur because of any default by MPSC on the Note or because of the default on the individual Guarantor.  (*Id*. § 2.)  They also waived a number of defenses and obligations including, *inter alia*, (1) notice of presentment, demand, protest, and notice of nonpayment or protest; (2) any rights of reimbursement, indemnity, exoneration, restitution, contribution, or other claim the Guarantors might otherwise be able to assert against MPSC; (3) all setoffs; (4) all counterclaims; and (5) all defenses that might otherwise be available based on suretyship law (including the invalidity or unenforceability of the Guaranty Agreement).  (*Id*. §4.)  Finally, the individual Defendants expressly agreed that their obligations would not be released, discharged, or affected by "any other act or omission which might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor . . ." (*Id.*)

Thereafter, MPSC defaulted on the Note.  (*See* Fiorentino Aff. ¶ 7, Pl.'s App. Ex. I, Doc. 39.)  Because of MPSC's default, Hitachi accelerated the Note, and the total amount due as of November 17, 2006, including  principal and interest, is $897,231.81.  (*Id*. ¶ 8.)  According to Hitachi, interest on this amount continues to accrue at the rate of $171.33 per day.  (*Id.*)

On June 8, 2006, Hitachi brought the current suit to recover the amount due on the Note, to enforce the Guaranty Agreements, and to recover their attorneys' fees (Doc. 1).  As previously noted,[2] the court entered default judgement against MPSC and Kirby and has also dismissed  Janowitz and Sanchez.  The individual Defendants have all answered Hitachi's

---

[2] *See* note 1, *supra*.

complaint, but only Bui, Guarjardo, and LaMarra have filed responses to Hitachi's motion for summary judgment. Additionally, Bui and Guarjardo filed (1) crossclaims against Kirby, Andress, and MPSC and (2) a fraud counterclaim against Hitachi. (*See* Bui Ans., Docs. 11; Guarjardo Ans., Doc. 12.) The court dismissed Bui's and Guarjardo's fraud claim against Hitachi for failing to plead with particularity an agency relationship between Hitachi and Kirby (*see* Opinion and Order, Doc. 56).[3] Hitachi has moved for summary judgment against each of the individual Defendants to collect on the limited personal guaranties.

II.          Legal Standard on Summary Judgment

          A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an

---

[3] Bui's and Guarjardo's crossclaims remain pending.

affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d

-5-

at1075).  The non-movant cannot discharge his burden by offering vague allegations and legal

conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife

Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in

search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909,

915-16 & n.7 (5th Cir. 1992)).

        Nevertheless, all reasonable inferences must be drawn in favor of the non-moving

party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable

Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary

judgment does not need to present additional evidence, but may identify genuine issues of fact extant

in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities,

Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary

documents already in the record that establish specific facts showing the existence of a genuine

issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  In

reviewing evidence favorable to the party opposing a motion for summary judgment, a court should

be more lenient in allowing evidence that is admissible, though it may not be in admissible form.

*See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.        <u>Analysis</u>

        "A guaranty is a promise by one party to be answerable for the payment of some debt

or performance of a contract or duty by another person, who himself remains liable." *Goff v.

Southmost Sav. & Loan Assoc.*, 758 S.W.2d 822, 824 (Tex. App.–Corpus Christi 1988, writ denied)

(citing *Wood v. Canfield Paper Co.*, 5 S.W.2d 748, 749 (1928, opinion adopted)).  Here, each

individual Defendant signed an "absolute, unconditional and continuing guaranty of . . . payment . . . in no way conditioned upon any requirement that [Hitachi] first proceed against [MPSC] . . ." (*See* Guaranty Agreements § 1.)  A "guaranty of payment," as distinguished from a "guaranty of collection," is a term of art meaning that a guarantor is primarily liable on a debt when the principal debtor fails to pay the debt.  *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.–Houston [14th Dist.] 1997, no writ).   A guarantor of payment waives any requirement that the holder of the note take action against the maker as a condition precedent to enforcing the guaranty obligation.  *Id.* (citing *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977)).  The modifiers "absolute" and "unconditional" in reference to this guaranty are merely alternative means of expressing "guaranty of payment."  *See Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 345 (Tex. App.–Tyler 1992, no writ) (noting that "[a] written guaranty that is unqualified and expresses no condition for the payment of the debt is an 'absolute guaranty'" and is sometimes referred to as a "guaranty of payment").  A "continuing" guaranty is one that "contemplates a future course of dealing, covering a series of transactions, generally for an indefinite time or until revoked."  *Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 553 (Tex. App.–Dallas 1968, no writ); *see also Sonne v. FDIC*, 881 S.W.2d 789, 793 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

Under Texas law, a plaintiff may recover upon a written guaranty if it is shown that the defendant executed the guaranty, that there exists an underlying debt which is due and outstanding, that the plaintiff owns the guaranty and the underlying debt, and that there is a certain amount owing and due to the plaintiff.  *See Rea v. Sunbelt Sav., Dallas*, 822 S.W.2d 370, 372 (Tex. App.–Dallas 1991, no writ); *Resolution Trust Corp. v. Thurlow*, 820 S.W.2d 51 (Tex. App.–San

Antonio 1991, no writ).[4]  In other words, to show that it is entitled to recover from the individual Defendants, Hitachi must prove that the Defendant executed the written guaranty, there exists a loan to which the guaranty specifically refers, Hitachi is the owner and holder of the guaranty and underlying loan debt, and money is due and owing to Hitachi.  *See id*.

The summary judgment evidence is undisputed that each individual Defendant executed guaranties in favor of Hitachi guaranteeing in part payment on the Note.  It is undisputed that Hitachi is the owner and holder of each guaranty as well as the underlying loan debt owed by MPSC.  Finally, it is undisputed that the Note is in default.  Hitachi has, therefore, met its initial burden to show its entitlement to enforce the guaranty obligations against the individual Defendants.  Barring evidence of a fact issue regarding these obligations, summary judgment in Hitachi's favor is appropriate.

Andress, Mann, and Crouse filed answers and Andress and Mann filed affirmative defenses, but none filed responses to Hitachi's motion for summary judgment.  In her answer, Andress denies that she has failed to pay the outstanding amount due to Hitachi. (*See* Andress Ans. ¶ 20, Doc. 5.)  Mann claims in his answer that his signature on the Guaranty Agreement has been forged.  (Mann Ans. § II, Second Affirmative Defense, Doc. 8).  Pleadings, however, are not competent summary judgment evidence. *Wallace*, 80 F.3d 1042 at 1046 (citing *Little*, 37 F.3d at1075).  Because Andress and Mann fail to raise any fact issue as to the enforceability of their guaranty obligations, the court grants Hitachi's motion for summary judgment against Andress and Mann.

---

[4] The court also notes that none of the individual Defendants dispute Hitachi's legal authority for upholding these guaranty agreements under Texas law.

Crouse, for his part, concedes that he unconditionally owes to Hitachi the prompt payment of his respective guaranty with all interest, collection costs, attorney's fees, and court costs. (*See* Crouse Ans. ¶ 20, Doc. 13.)  Moreover, he admits that his failure to pay the outstanding sums due to Hitachi under his Guaranty Agreement "constitutes a breach of the Guaranties and has caused the loss of principal[,] interest, other damages, and attorney's fees." (*Id.*)  Thus, Crouse does not provide any defense to the legitimacy of Hitachi's claim. Nor has he filed a response indicating any defenses to the enforcement of the Guaranty Agreement against him.  Because there is no fact issue regarding Hitachi's claim for payment under Crouse's Guaranty Agreement, the court grants Hitachi's motion for summary judgment against Crouse.

Of the six individual Defendants, only LaMarra, Bui, and Guarjardo have filed responses to the motion for summary judgment.  Each acknowledges undertaking the guaranty obligations, but claims that a mutual mistake was made in the amount of each defendant's liability. The gravamen of their argument is that the Guaranty Agreements do not reflect the true intentions of the parties, which was to limit liability to an amount proportionate to their capital contribution. LaMarra, Bui, and Guarjardo claim that the amounts stated in the Guaranty Agreements are the result of a mutual mistake in the actual ownership percentages, percentages that "were in fact materially different and, in some cases, dramatically different, than the *subscribed* amounts" in the MPSC Partnership Agreement.  (LaMarra Aff. 3, Def.'s Ex. A, Doc. 41 [emphasis in original].)

In response, Hitachi raises numerous objections to the summary judgment evidence of mutual mistake offered by LaMarra and relied on by Bui and Guarjardo.  Hitachi also argues that Bui and Guarjardo have waived this defense for failing to plead it in their respective answers. Finally, Hitachi claims that the parol evidence rule bars extrinsic evidence in this case, and,

alternatively, that there is no summary judgment evidence to support any mistake by Hitachi.  Thus, argues Hitachi, the mutual mistake defense must fail as a matter of law.  The court resolves the issue of mutual mistake, having assumed, *arguendo*, that Hitachi's objections to LaMarra's summary judgment evidence and Bui's and Guarjardo's waiver by failure to plead mutual mistake are overruled.

Before turning to the affirmative defense of mutual mistake, the court addresses the affirmative defenses Bui and Guarjardo pled but did not raise in their responses, namely (1) failure of consideration; (2) fraud; and (3) estoppel.  (*See* Bui Ans. ¶¶ 25-27, Doc. 11; Guarjardo Ans. ¶¶ 25-27, Doc. 12.)  Hitachi argues that all three affirmative defenses fail as a matter of law.  Bui and Guarjardo have failed to respond to Hitachi's arguments or to point to evidence that would establish a fact issue with respect to these defenses.  The court, therefore, grants Hitachi's motion for summary judgment against Bui and Guarjardo on these affirmative defenses.

Texas law recognizes the defense of mutual mistake, which permits parties contracting under a misconception or ignorance of a material fact to avoid the agreement.  *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) ("Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided.").  "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the [contract.]"  *Id.*

Here, LaMarra[5] claims that a mistake in the actual capital contributions of the non-managing partners led to a mistake in the ownership percentages used to calculate the guaranty amounts, which in turn led to a mistake in the amount of the limited guaranty he pledged.  To clarify the alleged mistakes, the court explores the winding path of LaMarra's argument at length.

LaMarra begins his argument by demonstrating the original ownership percentages for the MPSC partnership.   At the inception of the MPSC partnership, Andress and Kirby owned 15% of MPSC notwithstanding their capital contributions, and the seven non-managing partners split the remaining 85% ownership interest among them based on capital contributions.  (*See* Partnership Agreement § 4.01, Def.'s App. Ex. B, Doc. 41.)  According to the 2004 Partnership Agreement, the non-managing partners made the following capital contributions to the venture: Crouse contributed $60,000, Janowitz $30,000, Sanchez $60,000, Bui $45,000, Guarjardo $30,000, LaMarra $45,000, and Mann $30,000.  (*Id.* at Ex. A to Partnership Agreement.)  Therefore, Andress and Kirby each had a 7.5% ownership interest, Crouse had a 17% interest, Janowitz an 8.5% interest, Sanchez a 17% interest, Bui a 12.75% interest, Guarjardo an 8.5% interest, LaMarra a 12.75% interest, and Mann an 8.5% interest.  (Subscription Agreement, Def.'s App. Ex. C, Doc. 41.)[6]

---

[5] For the remainder of this analysis, the court's reference to "LaMarra" includes Bui and Guarjardo because Bui and Guarjardo do not make arguments of mutual mistake independent from those arguments asserted by LaMarra.

[6]   The court acknowledges that LaMarra's calculations in his affidavit exclude the managing partners, i.e., he calculates the interests out of 100% (excluding the managing partners) rather than 85% (including the managing partners); nevertheless, LaMarra reverts to including the managing partners when calculating his "actual ownership percentage."  (*See* LaMarra Aff. 3, Def.'s App. Ex. A, Doc. 41.)  Consistency is key when making comparisons, so the court relies on the original ownership percentages as expressed in the Subscription Agreement (Def.'s App. Ex. C, Doc. 41), which include the managing partners' 15% interest.

LaMarra claims that the MPSC partners and Hitachi agreed to limit the personal guaranties to an amount proportional to their ownership interest.  (LaMarra Aff. 2, Def.'s App. Ex. A, Doc. 41) ("It was the agreement between MPSC and its partners, on the one hand, and Hitachi on the other hand, that each of the MPSC partners would provide a limited guaranty in an amount in proportion to their ownership interest.")  The only evidence of this agreement, other than LaMarra's own testimony, is that the amount of the limited guaranties corresponds almost exactly to the ownership interests reflected in the MPSC Partnership Agreement.  To demonstrate this correlation, LaMarra calculates each guarantor's percentage of the total guaranty amount by comparing each individual guaranty amount to the total guaranty amount.  Expressed in terms of percentages, the limited guaranty amounts can be delineated as follows:  Kirby committed to 7.5% of the total guaranty amount, Andress to 7.4%, Crouse to 17%, Janowitz to 8.5%, Sanchez to 17%, Bui to 12.8%, Guarjardo to 8.5%, LaMarra to 12.8%, and Mann to 8.5%.  (*See id.* at 3 (including the managing partners).)   The following chart clarifies the comparison between the percentages of the total guaranty agreement and the ownership percentages in the 2004 MPSC Partnership Agreement:

| Partner | Limited Guaranty Amounts | Percentage of Total Guaranty | Ownership Interest based on Partnership Agreement |
|---|---|---|---|
| Kirby (Managing) | $25,595 | 7.5% | 7.5% |
| Andress (Managing) | $25,253 | 7.4% | 7.5% |
| Crouse | $58,012 | 17% | 17% |
| Janowitz | $29,006 | 8.5% | 8.5% |
| Sanchez | $58,012 | 17% | 17% |

| | | | |
|---|---|---|---|
| Bui | $43,680 | 12.8% | 12.75% |
| Guarjardo | $29,006 | 8.5% | 8.5% |
| LaMarra | $43,680 | 12.8% | 12.75% |
| Mann | $29,006 | 8.5% | 8.5% |
| TOTAL | $341,250 | 100% | 100% |

Thus, LaMarra claims, the limited guaranty amounts equal "almost to the penny" the ownership interests recited in the Partnership Agreement and serve as proof of the parties' agreement to base the guaranty amounts on each partner's ownership interest.  (*See id.* at 2.)

Next LaMarra alleges that a mistake was made in the ownership interests used to calculate the guaranty agreement because, when the guaranty agreements were signed, the *actual* capital contributions of Crouse, Janowitz, Sanchez, Bui, Guarjardo, LaMarra and Mann were $60,000, $30,000, **$120,000**, $45,000, **$15,000**, **$22,500**, and **$15,000** respectively for a total capital contribution of $307,500.  (*See* Pearce Aff. 2, Def.'s App. Ex. D, Doc. 41 (emphasis added).)  These capital contribution amounts translate into the following ownership interest percentages:  7.5% ownership interest for Kirby, 7.5% for Andress, 16.59% for Crouse, 8.29% for Janowitz, 33.17% for Sanchez, 12.44% for Bui, 4.15% for Guarjardo, **6.22%** for LaMarra, and 4.15% for Mann. (LaMarra Aff. 3, Def.'s App. Ex. A, Doc. 41 (emphasis added.)   Therefore, claims LaMarra,

> [b]ased on my actual 6.22% ownership interest in MPSC as of the April 26, 2005 date that my limited guaranty was executed with Hitachi, and based upon a total limited guaranty amount of all MPSC partners to Hitachi of $341,250, my limited guaranty should have been executed in the amount of $21,308.99, rather than $43,680.00.

(*Id.* at 4.)[7]  In other words, LaMarra claims that a mistake in the actual capital contributions of the non-managing partners led to a mistake in the ownership percentages which in turn led to a mistake in the amount of the limited guaranty he pledged.

The court finds LaMarra's theory unavailing.  Assuming without deciding that the parties did have an agreement to base the individual guaranty amounts on each partner's ownership interest, there is no evidence that a *mutual mistake* was made in the *original* Partnership Agreement interests at the time the Partnership Agreement was executed.  The mistake upon which LaMarra relies is the use of the original ownership interests rather than updated ownership percentages, but LaMarra has presented no evidence, either by affidavit or calculation, that the parties ever intended to use updated ownership percentages.  Indeed, the fact that LaMarra did not discover the "mistake" until well after the guaranty agreements were signed undermines his claim that the parties intended to use updated ownership percentages.  At most, LaMarra has presented evidence that the parties applied the original ownership percentages in reaching the guaranty amounts.  This is not evidence, however, of an intent to use *updated* ownership percentages.  Thus, LaMarra has failed to demonstrate that the guaranty agreements were "contracted under a misconception or ignorance of a material fact[,]" and the defense of mutual mistake does not apply.  *See Williams*, 789 S.W.2d at 264.

Additionally, the doctrine of mutual mistake does not apply if the party asserting the defense bears the risk of the mistake.  *See De Monet v. Pera*, 877 S.W.2d 352, 359 (Tex. App.–Dallas 1994, no writ) (citing Restatement (Second) of Contracts § 154(a) & (b) (1981));

---

[7] The court believes that LaMarra miscalculated the his limited guaranty using the 6.22% ownership interest.  Assuming that $341,250 remains the fixed amount of the total guaranty, 6.22% of $341,250 is $21,225.75, not $21,308.99.

*Cherry v. McCall*, 138 S.W.3d 35, 40 (Tex. App.–San Antonio, 2004, pet. denied); *Smith v. Lagerstam*, No. 03-05-00275-CV, 2007 Tex. App. LEXIS 5722, at *21 (Tex. App.–Austin July 19, 2007, no pet. h.) ("[A] party to an agreement may not seek relief on the ground of mistake if the risk of the mistake is allocated to that party."). Here, the individual Defendants expressly agreed that their obligations would not be released, discharged, or affected by "any other act or omission which might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor . . ." (Guaranty Agreements § 3.) The plain language of the Guaranty Agreement certainly embraces the "mistake" here, and LaMarra does not claim that there was a mistake with respect to this release, or to any other term of the Guaranty Agreement. This is underscored by the fact that, other than Bui and Guarjardo, no other partner has alleged a mistake of any kind.

Therefore, the court concludes that the mutual mistake defense is inapplicable to the facts of this case. "The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements." *Barker v. Roelke*, 105 S.W.3d 75 (Tex.App.–Eastland 2003, pet. denied); *see also Smith v. Lagerstam*, 2007 Tex. App. LEXIS 5722 at *10 (the doctrine of mutual mistake applies "only in rare circumstances"). Without application of this defense, no individual Defendant has pointed to an issue of fact that would preclude summary judgment in Hitachi's favor.

IV.       Conclusion

For all of the aforementioned reasons, it is hereby

**ORDERED** that Hitachi's motion for summary judgment (Doc. 38) is **GRANTED**.

SIGNED at Houston, Texas, this 20th day of September, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE